THE NEWARK PASSENGER RAILWAY COMPANY and THE
NEW JERSEY TRACTION COMPANY

*v.*

THE INHABITANTS OF THE TOWNSHIP OF EAST ORANGE.

Where, in virtue of a contract between a street railway company and a municipality, intended to have been made pursuant to law, the motive power of the street railway was changed from horses to electricity supplied through overhead wires supported by poles, at a considerable expense to the railway company, and has been operated accordingly for more than two years by the lessee of the railway company, and the municipality, now denying the legality of the contract upon its part and also the authority of the lessee of the railway company to operate the railway under the contract or otherwise, and insisting that the contract is not duly performed by the railway company and its assignee, threatens to remove the poles and wires, regarding them as nuisances in the street, which removal will inflict not only irreparable injury upon the railway company and its lessee in their business, but will also work great inconvenience to the public, the proposed action will be restrained upon the application of the railway company and its lessee, in order that the *status quo* may be preserved until the final hearing of the cause, provided that the court shall be satisfied that the contract is being duly performed upon the part of the applicants.

On motion for injunction. Heard on bills, affidavits and answer.

*Mr. Anthony Q. Keasbey*, for the complainants.

*Mr. J. Frank Fort* and *Mr. Hamilton Wallis*, for the defendant.

THE CHANCELLOR.

The original and supplemental bills are filed by two complainants. One of them, the Newark Passenger Railway Company, admittedly had power to construct and operate the railway in question through Main street, in East Orange. It did construct it, and until January, 1891, or thereabouts, operated it by horse power. On the 7th of that month the township committee of East Orange, having charge of the streets in that municipal-

ity, by its resolution consented that the propelling power of the cars of the Newark Passenger Railway should be electricity, supplied to motors in the cars by overhead wires supported by iron or steel poles planted within the curbs on opposite sides of the street and connected by steel wires. The resolution by which the consent was tendered prescribed terms upon which the consent should become effective, to wit, that the railway company should enter into a contract with the township to abide by and perform "all and singular the matters and things" in the resolution recited, and give bond in the penal sum of $10,000, which should be conditioned for the performance of the contract.

The contract contemplated was executed by both parties to it and bond was given by the railway company. The contract, among other things, provided that before the operation of the railway by the new power its tracks should be relaid and paved between, as stated therein; that the fares to be charged for passage upon the railway should not exceed five cents to any point on the line of the railway in East Orange or other municipalities; that the railway company would pay East Orange township yearly the sum of $10 for each car used in the township; that the railway company would level snow in the street when thrown out of its tracks, and that its cars should be run under five minutes' headway between five o'clock in the morning and midnight each day, and should be heated in cold weather and sufficiently lighted to enable passengers to read. After the delivery of the contract and bond, the Newark Passenger Railway Company, at considerable expense, relaid its tracks through Main street in East Orange, adapting them to the new motive power, and erected poles, strung wires, procured electric motors and abandoned its horse cars, and from thence hitherto its railway has been operated by electricity. The motive power of its whole system of railways, extending from Newark through East Orange into municipalities west of that township, was changed to electricity, in which system the railway through East Orange constitutes a link of the greatest importance not only to the complainants but also to the traveling public.

In March, 1892, the Newark Passenger Railway Company

executed a paper purporting to be a lease of its railroads, rolling-stock, franchises and privileges, to the New Jersey Traction Company, for the term of nine hundred and ninety-nine years, from the 1st of January, 1892, the latter company agreeing to pay an annual rental and to discharge the duties and obligations of the railway company, and thereupon the New Jersey Traction Company took possession of the property leased and hitherto has operated the railway. Subsequent to this leasing, question arose between the defendant and the traction company touching the latter's performance of the terms of the contract with the township, and the township committee passed an ordinance which provides for the removal of the poles and wires of the railway company, under authority of which, the complainants have each been notified to remove the poles and wires from Main street, and yet later, have been served with a notice to appear before the township committee and show cause why a resolution instructing the chief of police of the municipality to remove the poles and wires should not be passed.

At this stage of the proceedings the original bill herein was filed, and an order to the township to show cause why an injunction should not issue to stay the removal of the poles and wires, containing an *ad interim* stay of such removal, was granted.

On the 13th of December, 1893, the state board of commissioners of electrical subways assented to the use of electric motors by the Newark Passenger Railway Company and its lessee, as the propelling power of their cars, and to the maintenance of poles and electric wires for the operation of electric motors in East Orange and other localities, and, on the 13th of January, 1894, this consent was presented by supplemental bill.

The defendant has answered the bill, justifying the moral attitude of its proposed removal of the poles and wires by alleging a non-compliance by the complainants with the terms of their contract, to wit, in running their cars at an excessive rate of speed; in failing to run the cars upon five minutes' headway; in failing to pay the yearly fee of $10 for each car; in failing to pave between their railway tracks as the contract referred to

contemplates; in failing to carry passengers for the rates agreed upon, and in failing to level snow which has been thrown out of their tracks in the winter, and asserting a legal right to remove the poles, as a nuisance in the highway, for the reasons that its consent to the change of the motive power was by resolution and not by ordinance, as its charter required; that it was without legal power, either by resolution or by ordinance, to authorize the erection of poles and wires in the street; that its consent, even if valid, was a license to the Newark Passenger Railway Company, not transferable to the New Jersey Traction Company; that the Newark Passenger Railway Company was without power to lease to the New Jersey Traction Company, and the last-named company, being incorporated under the General Corporation law, could not become the lessee of the franchises of a railway company, and hence that the lease to it was a virtual abandonment, by the Newark Passenger Railway Company, of its franchises. It therefore insists that the rights upon which the complainants base their claim for relief, and which they seek to have protected *in limine*, failing, or at least being doubtful, under well-settled principle, a preliminary injunction will not issue.

It is perceived that the legal right claimed by the defendant is based upon allegations of defective title in the complainants, in that the defendant irregularly entered into a contract which it was without power to make, and the Newark Passenger Railway Company, by leasing to the New Jersey Traction Company, not only has forfeited the right which the contract may have secured to it, but has also abandoned its franchises, the traction company having no power to exercise them.

What the exact terms in the lease to the traction company are, does not appear, for that which is called the lease is not before me. Hence, I cannot enter upon the question whether or not the Newark Passenger Railway Company has abandoned the exercise of its franchises and forfeited the right which the contract with the defendant municipality may have secured to it.

The questions suggested by the defendant's attitude, if they possess merit, and as to that I do not now mean to express any

opinion, appear to be of the utmost importance to the complainants, and of such character that they cannot be satisfactorily passed upon in this present preliminary application.

It is acceded that when the electric road was constructed by the Newark Passenger Railway Company, that corporation had full power and authority to operate a street railway by electricity, provided it should obtain the consent of the defendant municipality, and that such defendant intended to give its consent by its resolution and contract, is beyond question. And it is also acceded that the railway company and the traction company successively, or jointly under the lease between them, have been in possession and use of the electric railway and have operated it in the public service since the contract was entered into. It is manifest, by the circumstances shown, that the cessation of that operation at this time will work not only a serious and irreparable injury to the complainants, but also an inestimable inconvenience to the public of East Orange and the municipalities west of it, and, at the same time, that the continuance of the operation to the time at which final hearing may be had upon full proofs, if the complainants, on their part, comply with the terms of the contract, cannot be seriously detrimental to the defendant municipality. Under such conditions, I deem it to be my duty to preserve the *status quo* till the case shall be finally disposed of. *Lowndes* v. *Bettle, 33 L. J. Ch. 451; 1 Spell. Ex. Relief 32; 1 High Inj.* § *698.*

But as the complainants now virtually seek the enforcement of the contract with the defendant municipality, and it is not equitable that they should have that enforcement, even temporarily, if they fail to obey the requirements of the contract on their part, my proposed action justly must be predicated upon their performance of it. While they deny non-performance in other respects, they substantially concede that they have failed to pay a license fee for each car used in the transportation of passengers within the limits of East Orange, because they dispute their liability to pay license fees for substituted cars. I construe the contract as the defendant does—that for every car used in the transportation of passengers, whether substituted for a car retired

or otherwise, the complainants must pay a license fee of $10 each year.    I will therefore require, as a condition precedent to the issuance of an injunction, that all the license fees from the date of the contract shall be paid.

By the terms of the order to be made, I will fix a time within which such payment must be made, and to that time the restraint heretofore directed will continue, and thereafter its continuance by injunction will depend upon the event of payment of the license fees or failure to pay them.    The defendant will be at liberty to at any time move for the dissolution of the injunction upon clear proof of non-compliance with the contract in other respects.